Edward VEGA, Plaintiff,

v.

STATE UNIVERSITY OF NEW YORK BOARD OF TRUSTEES; State University of New York Maritime College, Faculty Student Association of SUNY Maritime College, Inc.; Floyd H. Miller; James Desimone; Howard L. English; Carolyn D. Jones; and G. Peter Cooney, Defendants.

No. 97 Civ. 5767 DLC.

United States District Court, S.D. New York.

Sept. 28, 1999.

Julia Tarver, Laura A. Menninger, Paul Weiss Rifkind Wharton & Garrison, New York City, for plaintiff.

Eliot Spitzer, Attorney General of the State of New York, Martin Bienstock, Assistant Attorney General, New York City, for defendants State University of New York Board of Trustees, State University of New York Maritime College, Floyd H. Miller, James Desimone, Howard L. English, Carolyn D. Jones, and G. Peter Cooney.

Herbert Posner, Harrison, NY, for defendant Faculty Student Association.

COTE, District Judge.

After being fired from a teaching position at the State University of New York ("SUNY"), Edward Vega ("Vega") with the assistance of counsel filed an action in state court for violations of his rights under New York law ("State Action"). Thereafter, Vega filed this action *pro se* alleging violations of his federal statutory and constitutional rights. The defendants in this action moved to dismiss the federal complaint and that motion was referred to Magistrate Judge Naomi Reice Buchwald for a Report and Recommendation ("Report"). Since that Report was issued, the State Action has been concluded and counsel has now filed an appearance on Vega's behalf in this litigation. This Opinion addresses both the objections of the parties to the Report as well as an additional argument sounding in res judicata as a result of the conclusion of the State Action.

**Background**

The facts are set forth below as alleged by the plaintiff. Beginning in August 1993, Vega was an Adjunct Assistant Professor in the Humanities Department of the SUNY Maritime College ("Maritime") and was a Professional Writing Tutor at Maritime's Learning Assistance Center.

Beginning in January 1994, Vega was also hired to be an instructor of English at Maritime's Royal Saudi Language Program, and in the summer of 1994, he became the Assistant Dean of Freshman.

In June 1994, Vega was an English Instructor in Maritime's Summer Institute, teaching a basic composition course ("the Course"). All of the students in the Course "were of the age and sophistication to do college level work." On July 21, 1994, Vega conducted a lesson aimed at reducing the students' repetitive use of words and ideas in their essay writing ("the Lesson"). The Lesson used a brainstorming exercise called "clustering." Vega asked the students to choose a topic "on a matter of public concern," and by an overwhelming margin the students voted to discuss "sex," which Vega modified to "relationships/sex." Vega then wrote the students' ideas on the blackboard "in a graph representing clusters of related ideas." A "small minority" of students used sexually explicit language to express their ideas. Vega did not write any sexually explicit terms on the blackboard but instead used initials to represent the ideas. When the brainstorming exercise ended, Vega crossed out the initials meant to represent sexually explicit terms, and cautioned his students that "such terms would alienate their readers and should not be used at all or rarely and then only where it was essential to enlighten and persuade the reader."

In the final exam for the Course Vega instructed the students to write an essay taking a position on a controversial subject. Vega provided suggested topics, but allowed students to choose a topic of their own as an alternative.

Shortly after the Lesson, Carolyn Jones ("Jones"), the Maritime Director of Student Support Services and Director of the Summer Institute, and James DeSimone ("DeSimone"), Maritime's Commandant of Cadets, "ordered" a student resident assistant "to collect all of the notebooks and

private journals" of Vega's students, and in particular the students' notes of the Lesson. More than forty notebooks and private journals from Vega's students were collected and given to DeSimone. On August 13, 1994, DeSimone told both Floyd Miller ("Miller"), the President and Chief Executive Officer of Maritime, and Howard English ("English"), the Vice President of Academic Affairs, that Vega was using sexually explicit language to teach English composition in violation of Maritime's sexual harassment policy.

Vega was fired at a meeting with English and G. Peter Cooney ("Cooney"), the Director of Admissions, on August 17, 1994 (the "August 17 Meeting"). Among other things, they accused Vega of sexually harassing students, using sexually explicit language in class that was pornographic and contemptuous of men and women, writing obscenities on the classroom blackboard, creating a liability for the College, and posing a physical danger to students. Vega denied the charges, but acknowledged that "he had given the students the freedom to express themselves during a writing exercise and that some students had used sexual terms." Before the August 17 Meeting Vega had received no notice of any charges against him nor had he been "informed in any way that there was any concern about him or his teaching."

On August 24, 1994, Vega met with Miller to complain about the way he had been treated and requested a hearing to rebut the allegations against him. Miller "berated" Vega for violating Maritime's sexual harassment policy and for teaching pornography. Miller did not allow Vega to defend himself. In September 1994, DeSimone and James met with members of Maritime's staff and told them that Vega had been fired for teaching pornography. On October 3, 1994, Joan Api [1] ("Api"), an administrative assistant, Hope Becker ("Becker"), a Maritime counselor, and others told seventy or so of Vega's students that he had been fired for violating Maritime's sexual harassment policy.

On February 10, 1995, Vega's counsel filed an action in New York Supreme Court alleging defamation, "false light," breach of contract, and violations of New York's Constitution, specifically, deprivation of due process and violations of the right to free speech and free association. Vega named Maritime, DeSimone and Miller as defendants.[2] After the defendants moved to dismiss, Vega cross-moved for discovery and to amend the complaint to set forth separate causes of action. A motion for a second amended complaint was also submitted with demands for reinstatement, back pay, and the removal from Vega's personnel file of all negative statements and letters relating to the termination of his employment. On January 22, 1996, Justice Wilk dismissed all of Vega's claims other than the defamation claim, and granted the motion to amend the complaint and for discovery addressing the defamation claim.

On August 4, 1997, Vega filed this action *pro se*, and filed an amended complaint on October 23, 1997. Vega asserts pursuant to Sections 1983 and 1985 of Title 42 the following five violations of the United States Constitution: (1) that Maritime's sexual harassment policy violates the First Amendment by being a vague and overbroad restriction on free speech and not providing notice of prohibited conduct; that his termination violated his First Amendment rights (2) to speak out on matters of public concern and (3) to academic freedom; that the defendants' statements and actions, including the failure to provide him with a hearing before terminating his employment, deprived him without due process of his liberty interest (4) in his good name and reputation and (5) in academic freedom. Vega's sole federal

---

1. The SUNY Defendants spell this "Appi."

2. Vega also named Joseph Burke and Thomas Bartlett as defendants but subsequently dropped the charges against them.

statutory claim is that the defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), and its implementing regulations. Finally, Vega makes one state law claim, that is, that the defendants breached his employment contract.

The SUNY Board of Trustees, SUNY Maritime College, Miller, DeSimone, English, Jones, Cooney, Becker, and Api (collectively "the SUNY Defendants") moved to dismiss the amended complaint on the grounds that the action is barred by the doctrines of res judicata and collateral estoppel, and alternatively that they are protected by the doctrines of sovereign and qualified immunity. On February 3, 1998, Vega moved for leave to file a second amended complaint.

On February 24, 1998, the two motions were referred to Judge Buchwald. On June 19, 1998, the Magistrate Judge granted Vega leave to file his second amended complaint, which added the breach of contract claim and the Faculty Student Association of SUNY Maritime College ("FSA") as a defendant.[3] Most of the individual defendants named in the second amended complaint are alleged to be agents of FSA. FSA then sought leave to join the SUNY Defendants' motion to dismiss.

On August 4, 1998, the Report was issued. It recommended that the motion to dismiss be granted in part and denied in part, granted FSA's request to join the SUNY Defendants' motion only with respect to the collateral estoppel argument, and recommended that this action be stayed pending the outcome of the State Action.

The Court granted all parties until October 16, 1998, to file objections to the Report and each party objected to part of the Report. While the objections were pending, the parties informed the Court that on or about November 4, 1998, they had exe-

cuted a stipulation discontinuing the State Action with prejudice. The plaintiff had executed the stipulation *pro se*, because his attorney had been granted leave to withdraw on June 5, 1998. On December 1, 1998, the Court granted a request from Vega for the appointment of counsel. On April 8, 1999, counsel filed a Notice of Appearance on behalf of Vega. The Court set a schedule for filing supplemental objections to the Report, which all parties with the exception of FSA did. In addition, the SUNY defendants argued that the November 4, 1998 dismissal of the State Action requires dismissal of this action under the doctrine of res judicata.

**Discussion**

■ Rule 72 of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provides the standard for district court review of a federal Magistrate Judge's order. For dispositive matters, the District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). The Court shall make a *de novo* determination of those portions of the Report to which objections are made. *Id.; United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). With respect to those portions of the Report to which there has been no objection, the Court "need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted); *see also Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y.1991) (court may accept report if it is "not facially erroneous"). Accordingly, the Court considers the motion to dismiss *de novo* where there has been an objection and reviews the Report for facial error where no party has objected to Judge Buchwald's recommendation.

A court may dismiss an action pursuant Rule 12(b)(6), Fed.R.Civ.P., only if " 'it

**3.** The motion to dismiss, the Report, and the parties' objections do not address the contract claim, which is the only claim made against the FSA.

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the motion, the court must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat. Life Ins. v. Merrill Lynch & Co.* 32 F.3d 697, 699–700 (2d Cir.1994). The court can dismiss the claim only if, assuming all facts alleged to be true, plaintiff still fails to plead the basic elements of a cause of action.

When a plaintiff is proceeding *pro se,* the court must liberally construe the complaint. *See, e.g., Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997). "A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits." *Baker v. Cuomo,* 58 F.3d 814, 818 (2d Cir.1995). The complaint having been filed *pro se,* it will be liberally construed.

### 1. FSA

FSA objects to Judge Buchwald's recommendation that it be allowed to join the SUNY Defendants' motion only with respect to the collateral estoppel arguments and not the SUNY Defendants' res judicata arguments. Judge Buchwald found that FSA is being sued for breaching Vega's employment contract, and that the issues surrounding the alleged breach are "sufficiently different from the constitutional issues defended in the state action" that FSA's interests were not represented in the State Action.

This recommendation by Judge Buchwald does not remove a claim or defense for FSA and accordingly is non-dispositive. *See Vandewalker v. Quandt's Food Serv. Distribs.,* 934 F.Supp. 42, 48 (N.D.N.Y. 1996) (Pooler, J.) (citing Rule 72, Fed. R.Civ.P.). When reviewing a non-dispositive matter to which objections are made,

the Court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Rule 72(a), Fed.R.Civ.P. FSA does not dispute that its interests were not represented by SUNY in the State Action. Since this recommendation is not clearly erroneous, it is adopted.

### 2. Res Judicata

The SUNY Defendants argue that Vega's claims are barred by the doctrine of res judicata. In a Section 1983 action, "the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered." *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir.1999). Under both New York law and federal law, the doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997). Under New York law, however, res judicata does not bar subsequent litigation where the prior action could not have provided the relief the plaintiff seeks in the subsequent litigation. *See Leather,* 180 F.3d at 425; *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). An Article 78 proceeding does preclude a later action under the doctrine of res judicata, however, to the extent that

> a plaintiff in a later action brings *a claim for damages that could have been presented in a prior CPLR article 78 proceeding* against the same party, based upon the same harm and arising out of the same or related facts.

*Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 690 N.Y.S.2d 478, 481, 712 N.E.2d 647 (1999) (emphasis supplied). The damages that may be obtained through an Article 78 proceeding are circumscribed by the nature of that action. Only those damages that are "incidental to the primary relief sought" may be award-

**334**

ed in an Article 78 proceeding. N.Y.C.P.L.R. § 7806; *Parker,* 690 N.Y.S.2d at 482, 712 N.E.2d 647. Section 1983 compensatory damages for pain and suffering or punitive damages are not "incidental damages" in an Article 78 proceeding brought to obtain reinstatement and back pay. *See Parker,* 690 N.Y.S.2d at 482, 712 N.E.2d 647.

The SUNY Defendants urge that res judicata precludes this action because Vega brought or could have brought all of the claims he pursues here in the State Action. In the State Action, Justice Wilk converted every claim in Vega's complaint except for the defamation claim into an Article 78 proceeding and then dismissed the Article 78 claims.[4] Through his Article 78 proceeding Vega sought and could have received reinstatement and back pay. In his federal complaint Vega seeks compensatory and punitive damages, as well as reinstatement and back pay. Because compensatory and punitive damages could not have been awarded in the Article 78 proceeding, *Parker,* 690 N.Y.S.2d at 482, 712 N.E.2d 647, these demands for relief are not precluded by res judicata, *see Leather,* 180 F.3d at 425. On the other hand, Vega could have received reinstatement, back pay and "accrued rights and privileges" in his Article 78 lawsuit, therefore res judicata bars relitigation of these claims against the SUNY Defendants. *Parker,* 690 N.Y.S.2d at 482, 712 N.E.2d 647.

SUNY Defendants next argue that the November 4, 1998 Stipulation of Discontinuance of the State Action ("Stipulation") precludes any remaining claims in this federal action. Generally, a stipulation of dismissal with prejudice "is deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted or which could have been asserted" in the prior action. *Israel v. Carpenter,* 120 F.3d 361, 365 (2d Cir.1997), *cert. denied,* 522

U.S. 1114, 118 S.Ct. 1049, 140 L.Ed.2d 113 (1998) (internal quotation omitted). "Such a stipulation will (almost invariably) have preclusive effect notwithstanding a litigant's post hoc assertion that he intended to preserve certain claims." *Id.* Thus, a party will ordinarily not be relieved from the preclusive effect of a stipulation because his counsel failed to evaluate carefully its res judicata effect. *Id.* (citing *Nemaizer v. Baker,* 793 F.2d 58, 62–63 (2d Cir.1986)). Where, however, a party argues that none of those executing the stipulation intended the scope of the stipulation to preclude the subsequent action, the court considers the intent of the parties entering into the stipulation. *Id.* at 366.

Vega argues that the parties intended the stipulation to dismiss the state action and to preclude refiling the action in state court but that they did not intend for it to preclude this federal action. The scope of the stipulation is governed by state law. *Id.* Under New York law, a writing must be interpreted "to give effect to the intention of the parties" as expressed in the writing's unequivocal language. *Wallace v. 600 Partners Co.,* 86 N.Y.S.2d 543, 634 N.Y.S.2d 669, 671, 658 N.E.2d 715 (1995).

The stipulation entered into by the parties to terminate the State Action stated:

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, EDWARD J. VEGA, plaintiff pro se and Dennis Vacco, Attorney General for the State of New York, attorney for defendants STATE UNIVERSITY OF NEW YORK MARITIME COLLEGE AT FORT SCHUYLER, JAMES C. DESIMONE AND FLOYD H. MILLER, that whereas no party hereto is an infant or incompetent person for whom a committee of conservatee has been appointed and no person

**4.** The parties have provided the state court record and do not object to the Court's taking judicial notice of the record.

not a party has an interest in the subject matter of the action, the above entitled action be and the same hereby is *discontinued with prejudice to renew in State Court* without cost to either party as against the other. This stipulation may be filed without further motion with the Clerk of the Court pursuant to Rule 3217 of the CPLR.

(Emphasis supplied). The plain language of the Stipulation makes it clear that the Stipulation precluded only the refiling of the action in state court. The Stipulation does not address this action, which was then pending, and accordingly, the Stipulation does not preclude the continued prosecution of this action.

Any other result would work an injustice. When he executed the Stipulation the plaintiff was proceeding *pro se*. He had received the Magistrate's Report, which contained a recommendation that his federal action be stayed pending the completion of the State Action. All parties had already submitted objections to the Report. Thus, both the language of the Stipulation and the circumstances in which it was executed dictate the conclusion that it was only intended to prevent any refiling in state court and to remove any bar to completing the federal action.[5]

### 3. Collateral Estoppel

 SUNY Defendants and FSA next argue that each of the federal claims in Vega's complaint is barred by the doctrine of collateral estoppel. Under New York law, collateral estoppel will bar relitigation in the following circumstances:

(1) the issues in both proceedings must be identical, (2) the relevant issues must have been actually litigated and decided in the prior proceeding, (3) there must have been a full and fair opportunity for the litigation of the issues in the prior

proceeding, and (4) the issues must have been necessary to support a valid and final judgment on the merits.

*Leather,* 180 F.3d at 426 (internal quotations omitted). The doctrine of collateral estoppel "is grounded on concepts of fairness and should not be rigidly or mechanically applied." *In re Sokol,* 113 F.3d 303, 306 (2d Cir.1997). Collateral estoppel will apply only if it is "quite clear" that the elements have been met so that a party is not "precluded from obtaining at least one full hearing on his or her claim." *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995) (citing *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328 (1979)). The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply collateral estoppel while the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing its application. *Kulak v. City of New York,* 88 F.3d 63, 72 (2d Cir.1996) (applying New York law). Judge Buchwald found that the defendants identified with specificity only two issues decided by the state court that are also asserted in this litigation: a free speech claim and a claim that Vega was denied the hearing to which he was allegedly entitled by Title IX and Maritime's sexual harassment policy.

#### a. First Amendment: Matters of Public Concern

 Judge Buchwald recommends that this Court find that Vega's claim that he was denied the freedom to speak on matters of public concern is barred by the doctrine of collateral estoppel. Vega objects to this recommendation by arguing that he was denied a full and fair opportunity to litigate the claim in the State Action in a number of ways.[6] A determina-

---

5. Given the status of the federal litigation, the language of the Stipulation, and the fact that the plaintiff was proceeding *pro se* when he executed the Stipulation, this portion of the

State's res judicata argument is inappropriate at best.

6. The parties do not object to Judge Buchwald's conclusions regarding the other ele-

tion whether a party had a full and fair opportunity to litigate

> "requires consideration of the realities of the [prior] litigation, including the context and other circumstances which ... may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him."

*Hickerson,* 146 F.3d at 109 (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487 (1984)). Factors to be considered include

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of prior litigation, [and] the competence and expertise of counsel.

*Id.* (quoting *Ryan,* 478 N.Y.S.2d at 827, 467 N.E.2d 487).

■ Vega first argues that he was denied a full and fair opportunity to litigate when the defendants addressed the merits of the free speech claim for the first time in reply. Defendants' motion to dismiss the State Action was based on improper service, lack of jurisdiction, immunity, the failure to state a claim for breach of contract, and the failure to specify separate causes of action. In response to the motion Vega submitted an opposition primarily addressing the procedural defects asserted by defendants, as well as a cross-motion to amend the complaint and for discovery. A proposed amended complaint separated the causes of action. The memorandum of law accompanying the motion to amend briefed the law concerning amendment of pleadings but not the merits of the individual causes of action. The defendants then submitted a memorandum titled "Reply," which they explained was submitted "in further support of the in-

stant motion ... and in opposition to the plaintiff's cross-motion to amend the complaint." Defendants' Reply addressed for the first time the substance of Vega's freedom of speech claims. Vega did not submit a reply to the defendants' opposition to his cross-motion.

Given this history, Vega has not shown that the defendants' decision to address the merits of his freedom of speech claim in a Reply memorandum deprived him of a full and fair opportunity to litigate this claim. Although the defendants' memorandum was titled "Reply," it also was filed in opposition to Vega's motion to amend and, as a consequence, appropriately addressed the merits of the separate causes of action identified in the amended pleading.

■ Vega next argues that he was denied a full and fair opportunity to litigate this claim because he was not permitted to conduct discovery. The lack of discovery does not, in and of itself, prevent a finding of collateral estoppel. *See Hickerson v. City of New York,* 997 F.Supp. 418, 424 (S.D.N.Y.), *aff'd* 146 F.3d 99 (2d Cir.1998), *cert. denied, Amsterdam Video, Inc. v. City of New York,* — U.S. —, 119 S.Ct. 795, 142 L.Ed.2d 658 (1999), *and cert. denied, Hickerson v. City of New York,* — U.S. —, 119 S.Ct. 795, — L.Ed.2d— (1999). Vega does not explain what discovery he needed and consequently does not demonstrate that without discovery he was denied a full and fair opportunity to litigate.

■ Vega further argues that he was denied a full and fair opportunity to litigate because his counsel was incompetent. Vega does not specify how his counsel's performance—even if deficient—affected

---

ments of collateral estoppel. In particular, there is no dispute that in this context a decision that free speech rights have not been violated under the New York Constitution constitutes a decision that there is no violation of the parallel right under the federal Constitution. Finding no facial error, this

recommendation is adopted. *See Hickerson v. City of New York,* 146 F.3d 99, 104 (2d Cir. 1998), *cert. denied, Amsterdam Video, Inc. v. City of New York,* — U.S. —, 119 S.Ct. 795, 142 L.Ed.2d 658 (1999), *and cert. denied, Hickerson v. City of New York,* — U.S. —, 119 S.Ct. 795, — L.Ed.2d— (1999).

the outcome of the State Action, however, and consequently does not demonstrate that his counsel's performance denied him a full and fair opportunity to litigate. *See Choi v. State of New York,* 74 N.Y.2d 933, 550 N.Y.S.2d 267, 269, 549 N.E.2d 469 (1989); *Cerbone v. County of Westchester,* 508 F.Supp. 780, 785 (S.D.N.Y.1981). *Compare Clark v. Department of Correctional Servs.,* 564 F.Supp. 787, 788–89 (S.D.N.Y.1983). While Vega contends that his attorney should have filed a reply memorandum in support of his motion to amend, he does not indicate how this would have altered the result or even what relevant law Justice Wilk failed to consider.

 Vega next argues, without authority in support, that Justice Wilk's conversion of Vega's complaint into an Article 78 proceeding without notice denied him a full and fair opportunity to litigate. Justice Wilk commendably converted Vega's claims in an effort to provide him with a prompt hearing on the heart of his lawsuit—the claim that he had been wrongfully fired. In sum, Vega has failed to meet his burden to show that he was denied a full and fair opportunity to litigate the claim that he was denied the freedom to speak on matters of public concern, and accordingly, this claim is precluded by the doctrine of collateral estoppel.

### b. First Amendment: Academic Freedom

Judge Buchwald declined to make a recommendation on whether collateral estoppel bars Vega's First Amendment academic freedom claim because she concluded that the defendants had not moved to dismiss this federal claim. The state court complaint alleged a violation of the right to academic freedom under the New York State Constitution. The issue was litigated by the parties and ruled upon by Justice Wilk, who found that

> Regarding his constitutional rights, Vega has failed to meet his burden. He provides no support for his contention

that the New York Constitution affords protection for academic freedom.

 Insofar as the doctrines of academic freedom protected by the New York Constitution and the United States Constitution share the same necessary elements, collateral estoppel would ordinarily bar relitigation here. The defendants argue, however, that it is unnecessary to undertake this analysis because the right to academic freedom is not distinct from the right to speak out on a matter of public concern, and consequently, the collateral estoppel bar on the free speech claim applies to the academic freedom claim as well. Academic freedom and speech addressing matters of public concern, however, are protected under distinct doctrines. *Compare Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 271, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Silano v. Sag Harbor Union Free Sch. Dist. Bd. Educ.,* 42 F.3d 719, 723 (2d Cir.1994) (addressing the test for academic freedom claims) *with Pickering v. Board of Educ. of Township High Sch. Dist.,* 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 282 (2d Cir.1999) (addressing claims alleging a deprivation of free speech on matters of public concern). It is notable that Vega alleges a distinct set of facts as a basis for each of the two claims.

 Given the decision of the SUNY Defendants to argue that the two free speech claims are identical and to make no separate motion to dismiss the academic freedom claim as barred by the doctrine of collateral estoppel, the parties have not compared the federal and state academic freedom doctrines to determine whether they share necessary elements. The Court agrees with Judge Buchwald that the defendants did not separately move to dismiss the academic freedom claim on the ground of collateral estoppel. Accordingly, the motion to dismiss the academic

freedom claim is denied.[7]

### c. Title IX

Judge Buchwald recommends that Vega's claim that he was denied his right to a hearing, as required by Title IX[8], be dismissed as barred by the doctrine of collateral estoppel. Vega objects on the ground that he did not assert a claim under Title IX in his state complaint.[9]

■ There is no explicit allegation in any of Vega's pleadings that he was denied a right to a hearing and no reference at all to Title IX.[10] The second cause of action in both the first and second amended complaints states that under the New York Constitution, Vega has the "rights of freedom of speech and freedom of association and the rights of academic freedom." The claim cites the Maritime policy regarding academic freedom, and states that Vega's "actions and activities" that were part of the Lesson were "totally related to and an integral part of the writing techniques and writing skills being taught by [Vega]." The cause of action continues that

> The improper and outrageous acts of defendants in terminating plaintiff from his teaching positions and not permitting plaintiff to remain on Maritime Campus ... and in preventing plaintiff from resuming teaching in the coming academic

year ... impinged upon and violated plaintiff's rights of academic freedom, rights of freedom of speech in conducting classes, rights of association with students, former students and faculty and rights under the New York State Constitution.

There is no mention of a right to a hearing on charges of sexual harassment or of any right to a hearing before termination of employment. Nor do the first, third or fourth causes of action address the right to a hearing before being fired or following accusations of sexual harassment.[11]

Vega's first reference to any due process right to a hearing appears in an "Affirmation in Support" of the cross-motion to file a second amended complaint. That document states that the second cause of action

> is for violation of plaintiff's rights in the academic freedom area AND for violation of plaintiff's rights of due process and a fair hearing respecting sexual harassment issues. . . .

(Emphasis supplied.) The plaintiff's memorandum of law adds that Vega was not given an opportunity to defend himself against charges of sexual harassment and asserts that Title IX requires Maritime to provide such a hearing. Specifically, the memorandum argues:

---

7. If it had been necessary to reach the issue of collateral estoppel on Vega's First Amendment academic freedom claim, to the extent he raised the procedural arguments already discussed in connection with his other free speech claim, those arguments would have been rejected here as well for the same reasons.

8. The regulations enacted under Title IX require an educational institution governed by Title IX, such as SUNY, to adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part. 34 C.F.R. § 106.8 (1994). Discrimination on the basis of sex by educational institutions is prohibited by Title IX. *See, e.g., Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989, 1994, 141 L.Ed.2d 277 (1998).

9. To the extent that Vega also argues that collateral estoppel should not apply for the same procedural reasons addressed above, those arguments are also rejected here.

10. The original complaint does not set forth causes of action, but does assert that Vega's rights under the New York Constitution to "academic freedom and freedom of speech and freedom of association" were violated.

11. The fourth cause of action was added in the second amended complaint and does not appear in the first amended complaint. The first cause of action alleges defamation; the third cause of action asserts breach of contract; and the fourth cause of action demands reinstatement, back pay, other benefits, and the removal from Vega's personnel file of all negative references regarding the termination of his employment.

That academic freedom was impinged upon and plaintiff was accused of sexual harassment by virtue of what defendants claim (contrary-to-fact) took place in plaintiff's classroom.

Where federal funds are supplied to any educational institution ... under ... *Title IX* ... the accused is entitled to a fair hearing under procedures developed by the institution where allegations are made of sexual ... harassment.

(Emphasis supplied.) As noted, however, the proposed second amended complaint itself does not allege a failure to provide a hearing.

Justice Wilk describes the proposed second amended complaint as seeking relief for defamation, false light, violation of the right to academic freedom under the New York Constitution and Maritime policies, and for breach of contract. Justice Wilk does not identify a cause of action for failure to provide a hearing either generally or following a charge of sexual harassment. Justice Wilk ruled, however, that

Vega also fails to demonstrate that he was terminated in violation of ... Maritime's ... sexual harassment policies. After investigating the incident, English and Miller determined that Vega's conduct was "inappropriate and insensitive." Miller concluded that Vega was not "best qualified" to teach at Maritime. Because there is no evidence that Miller's decision was arbitrary or irrational, it is inappropriate for the Court to second-guess the judgment of a professional educator.

*Vega contends that he was denied a hearing on Maritime's claim of sexual harassment against him. Vega has failed, however, to provide proof that a hearing was required.*

(Emphasis supplied and citation omitted.)

Judge Buchwald recommends interpreting Justice Wilk's Opinion to mean that neither Maritime's own policies nor Title IX required a hearing before discipline was imposed for sexual harassment. Vega does not object to this recommendation. Judge Buchwald further recommends that the ruling that a hearing was not required precludes Vega's Title IX claim in the federal action. Vega objects on the ground that the question of Title IX's requirements was not raised in his state complaints, and was therefore not properly or necessarily before the court.

■ Even if an issue is placed before a court, to have collateral estoppel effect a ruling in the prior action must be material to the prior proceeding and essential to the prior judgment. *Ryan,* 478 N.Y.S.2d at 826, 467 N.E.2d 487; *United States v. Hussein,* 178 F.3d 125, 129 (2d Cir.1999); *Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 897 (2d Cir.1997); *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1457 (2d Cir.1995); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421 at 194–97 (1981 and Supp.1999). *Compare Irish Lesbian and Gay Org. v. Giuliani,* 143 F.3d 638, 645 (2d Cir.1998) (where plaintiffs raised issue in pleadings and motion papers and district court reached the issue collateral estoppel applied).

A decision on whether a hearing was required by Title IX was not essential to Justice Wilk's ruling because Vega's complaints did not assert a claim under Title IX. *See, e.g., Quartararo v. Catterson,* 917 F.Supp. 919, 944–45 (E.D.N.Y.1996) (although issues may have been decided in Article 78 proceeding they were not essential to the judgment and therefore collateral estoppel did not apply). Since Justice Wilk's ruling on the motion to dismiss did not need to address the Title IX argument, collateral estoppel does not preclude Vega's Title IX claim.

*4. Conspiracy*

Judge Buchwald recommends *sua sponte* that the Section 1985 claim be dismissed without prejudice for failure to allege racial or other class-based animus. The parties having made no objection, and

finding no facial error in the recommendation, it is adopted.

### 5. Sovereign Immunity

 SUNY and SUNY Maritime contend that sovereign immunity bars the complaint against them. Vega responds that the Title IX claim may be brought against both defendants. The Eleventh Amendment bars a suit for damages brought against a state, its agencies, or its officials acting in their official capacity. *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir.1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). SUNY and its schools are state agencies for Eleventh Amendment purposes. *See Anderson v. State University of New York*, 169 F.3d 117, 119 (2d Cir.1999); *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir.1990).

 Sovereign immunity may be abrogated by Congress. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, —— U.S. ——, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999). Congress expressly abrogated the states' sovereign immunity for Title IX claims in the Rehabilitation Act Amendments of 1986, providing that

> [a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of ... title IX of the Education Amendments of 1972....

42 U.S.C. § 2000d–7;[12] *Franklin v. Gwinnett Pub.Sch.*, 503 U.S. 60, 72, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Accordingly, the motion to dismiss the Title IX claim against the SUNY and Maritime is denied. All other claims against SUNY and Maritime are dismissed.

### 6. Qualified Immunity

SUNY Defendants next argue that any remaining claims should be dismissed under the doctrine of qualified immunity. Judge Buchwald recommends that the motion be denied with respect to Vega's First Amendment academic freedom claim and the claim that Vega was denied procedural due process in connection with his liberty interest in his reputation. Judge Buchwald recommends granting qualified immunity with respect to the claim that Maritime's sexual harassment policy is vague, overbroad, and does not provide notice of proscribed conduct in the classroom by teachers, and the claim that Vega was denied due process in connection with his liberty interest in academic freedom. The parties object to these recommendations with one exception. Vega does not object to the dismissal of his academic freedom due process claim. Finding no facial error, the recommendation that the academic freedom due process claim be dismissed is adopted.

 Qualified immunity protects state actors sued in their individual capacity from a suit for damages. *Lewis v. Cowen*, 165 F.3d 154, 166 (2d Cir.1999), *pet. for cert. filed*, 68 USLW 3007 (U.S. June 17, 1999) (No. 98–2028). A state actor will be qualifiedly immune where his actions did not violate rights that a reasonable person would have known were clearly established. *Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir.1999). A court evaluating a claim of qualified immunity must

> first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.

*Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) (internal quotations omitted). Three factors determine whether a right is clearly established:

---

**12.** This provision of the Rehabilitation Act was enacted pursuant to Congress' powers under the Fourteenth Amendment. *Santiago v. New York State Dep't Correctional Services*, 945 F.2d 25, 31 (2d Cir.1991).

(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996) (internal quotations omitted).

a. *First Amendment Right to Academic Freedom*

The Supreme Court has recognized that the right to freedom of speech is not shed "at the schoolhouse gate." *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The content of an educator's school-sponsored speech may thus be limited only where it is "reasonably related to legitimate pedagogical concerns." *Silano,* 42 F.3d at 722 (quoting *Hazelwood,* 484 U.S. at 273, 108 S.Ct. 562). Accordingly, the Supreme Court

> [r]ecognizing that in our society the classroom is peculiarly the "marketplace of ideas," [has] not hesitated to strike down laws that effectively inhibit the free discussion of novel or controversial ideas, or that directly prohibit the teaching of unpopular subject matter.

*Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271, 296, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984) (Brennan, J., dissenting) (internal quotations and citations omitted). Vega alleges that his in-class speech was regulated for reasons other than legitimate pedagogical concerns, and therefore, alleges deprivation of a constitutional right.

SUNY Defendants argue that any First Amendment right to academic freedom was not clearly established in July and August 1994, when the acts of which

Vega complains occurred. They contend that as of the summer of 1994, a teacher's right "to in-class free speech protections" was only recognized in the context of a public employee's right to speak on matters of public concern. In support of this argument, they rely on *Blum v. Schlegel,* 18 F.3d 1005, 1011–12 (2d Cir.1994), which found that a law school professor had engaged in protected speech when he advocated the legalization of marijuana in class and in campus publications. In reaching this conclusion, the Court did not explicitly discuss the doctrine of academic freedom, but only the right to speak on matters of public concern. The fact that *Blum* only found it necessary to discuss the professor's speech in terms of the public concern doctrine does not end the inquiry. As long ago as 1990, the Second Circuit observed that

> for decades it has been clear that the First Amendment tolerates neither laws nor other means of coercion, persuasion or intimidation "that cast a pall of orthodoxy" over the free exchange of ideas in the classroom.

*Dube,* 900 F.2d at 598 (reversing the grant of qualified immunity where plaintiff alleged defendants denied him tenure based on his "classroom discourse") (quoting *Keyishian v. Board of Regents,* 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)). Accordingly, the First Amendment right to academic freedom was clearly established in the summer of 1994 and this argument by the SUNY Defendants in support of their claim of qualified immunity is rejected.

b. *Overbroad and Vague Sexual Harassment Policy*

Vega alleges that he was fired pursuant to Maritime's sexual harassment policy and that the policy is an overbroad and vague restriction on free speech that does not provide adequate notice of prohibited conduct.[13] The first task in deter-

**13.** Vega does not expressly state whether he challenges the sexual harassment policy on its face or as applied to him. The parties do not address the nature of Vega's claim. Liberally

mining whether qualified immunity applies is to define the legal right at stake with the appropriate degree of specificity. *Shechter v. Comptroller*, 79 F.3d 265, 269 (2d Cir.1996). In general, a disciplinary policy that implicates the First Amendment may not be unconstitutionally vague or overbroad and must provide adequate notice of proscribed conduct. *See, e.g., Keyishian*, 385 U.S. at 603–04, 87 S.Ct. 675.

Vega alleges that Maritime's sexual harassment policy did not address classroom speech and could not have been reasonably construed to proscribe "a teacher permitting students in a classroom exercise to generate some sexually explicit terms." The inquiry required to evaluate whether Maritime's policy comports with the requirements of the First Amendment is a fact intensive one that cannot be resolved on a motion to dismiss. Consequently, the defendants' motion to dismiss on the ground of qualified immunity is denied. *See, e.g., King v. Simpson*, 189 F.3d 284 (2d Cir.1999); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir.1999). *See also Jeffries v. Harleston*, 21 F.3d 1238, 1248 (2d Cir.1994) (on appeal following trial, qualified immunity held inapplicable where plaintiff alleged he was removed as university department chair by City College of New York in violation of his right to freedom of speech even though there was no prior case "on all fours" with allegations), *vacated on other grounds*, 513 U.S. 996, 115 S.Ct. 502, 130 L.Ed.2d 411 (1994).

### c. Due Process Regarding Loss of Reputation

SUNY Defendants next assert that they are protected by the doctrine of qualified immunity from Vega's procedural due process claim. Vega claims that the failure to provide him with a hearing before firing him infringed his liberty interest in his good name and reputation.

construing the complaint Vega makes both a

A procedural due process claim requires the plaintiff to show that state action infringed upon a property or liberty interest protected by due process and that the process received by the plaintiff was inadequate. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 & n. 3, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). There is a recognized liberty interest " 'to engage in any of the common occupations of life.' " *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). This interest, however, is not affected by every state action with respect to employment; courts have found violations of this interest only in certain employment situations. "Special aggravating circumstances are needed to implicate a liberty interest." *Id.* The liberty interest protects against government actions that "serve as a significant impediment to [plaintiff's] pursuit of [his] profession." *Jannsen v. Condo*, 101 F.3d 14, 16 (2d Cir.1996). To assert a violation of such a liberty interest successfully, more than a "free-standing defamatory statement made by a state official about an employee" is required. *Donato*, 96 F.3d at 630. Instead, the accusations must

> denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.

*Id.* at 630–31. Importantly, "[s]tigmatizing statements by the government about an employee upon [his] discharge only implicate a liberty interest when there is also a public disclosure." *Id.* at 631.

SUNY Defendants argue that Vega was provided all of the process he was due through the Article 78 proceeding, and that in any event the law was not clearly established in 1994 that other process was required. Where a liberty inter-

facial and an as applied challenge.

est is denied by state officials acting in a random and unauthorized manner a post-deprivation remedy such as an Article 78 proceeding provides all of the required process. *Hellenic American Neighborhood v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996). Where, however, the deprivation occurs "in the more structured environment of established state procedures" a predeprivation hearing is generally required. *Id.* The " 'controlling inquiry is solely whether the state is in a position to provide for predeprivation process.' " *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 534, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). *See also Zinermon v. Burch,* 494 U.S. 113, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

It was clearly established in the summer of 1994, that a predeprivation hearing is required, whether the interest at stake is a property or a liberty interest, when the state can feasibly provide one. *See Zinermon,* 494 U.S. at 132, 110 S.Ct. 975; *Hudson,* 468 U.S. at 534, 104 S.Ct. 3194. The attempt to invoke the defense of qualified immunity on the ground that the right to a predeprivation hearing was not clearly established in the summer of 1994, therefore, fails.

### Conclusion

In sum, the SUNY Defendants' motion to dismiss is granted with respect to the following claims: a First Amendment violation based on speech on a matter of public concern; the conspiracy claim; the violation of the Due Process Clause based on a liberty interest in academic freedom; and all claims against SUNY and Maritime except for the Title IX claim. Any demand against the SUNY Defendants for reinstatement, back pay, and accrued rights and privileges is also dismissed.

The motion to dismiss is denied in all other respects.

SO ORDERED.