**JEFFREY M. BROWN ASSOCIATES, INC., Plaintiff,**

v.

**CRK CONTRACTING OF SUFFOLK, INC., Defendant.**

**No. CIV. A. 99–5487.**

United States District Court, E.D. Pennsylvania.

June 14, 2000.

George E. Pallas, Edward T. De Lisle, Cohen and Huntington, P.C., Philadelphia, PA, for Plaintiff.

Austin Hogan, White and Williams, Philadelphia, PA, Gerald Zisholtz, Stuart Zisholtz, Arnold J. Kaplan, Mineola, NY, for Defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court are plaintiff's motion for partial summary judgment on defendant's counterclaims and defendant's motion for sanctions and for partial summary judgment.

## I. Background

Plaintiff Jeffrey M. Brown Associates, Inc. (JMB) provides construction management services. In 1994 and 1995, JMB entered into three contracts with three different owners to construct Caldor department stores. These three projects have come to be known as the Flatbush Project, the Glen Oaks Project, and the Jericho Project. JMB, in turn, entered into three subcontracts with the defendant, CRK Contracting of Suffolk, Inc. (CRK).

These prosaic beginnings led to a Dickensian series of lawsuits. The first suit, known as the Hartford Action, began in 1996 in New York state court, when CRK sued Hartford Insurance Company, JMB's payment bond surety, seeking to recover $505,335 for electrical work it had allegedly performed on the Flatbush Project but for which it had allegedly not been paid. JMB was not a party to this action. On July 3, 1997, the jury found that CRK was not entitled to recover any monies under the terms of the subcontract with JMB, and a defense verdict was entered in favor of Hartford. This decision was affirmed on appeal.

A second lawsuit, known as the Forest City Action, commenced in September 1997, also in a New York state court. In this action, CRK sued, *inter alia*, JMB; Forest City, the owner of the Flatbush Project; the law firm and an attorney that represented JMB; Jeffrey Brown, JMB's principal; and Robert Beyea, a JMB employee. This litigation stemmed from a settlement by which JMB and Forest City ended their own lawsuit. The settlement established a trust fund to pay licensees and future lienors. CRK again asserted various claims pertaining to the Flatbush Project, alleging that it was a beneficiary of the settlement and entitled to payment under its terms. On April 12, 1998, the state court granted summary judgment in favor of the defendants based on res judi-

cata and collateral estoppel. This decision was also affirmed on appeal.

A third group of lawsuits have also been dismissed. In June 1996, JMB sued CRK in this district alleging deficient performance on the Flatbush Project. Meanwhile, CRK had already filed two lawsuits pertaining to the Glen Oaks and Jericho Projects in the New York state courts.[1] At the time these three actions were pending, the Forest City and Hartford Actions were on appeal. CRK and JMB entered into an agreement entitled the Settlement and Standstill Agreement (Standstill Agreement), see Def. Ex. G, that provided in part that the pending actions would be dismissed without prejudice. If CRK did not prevail on appeal on either the Hartford or Forest City Action, JMB was to commence suit against CRK in this court, and CRK was to allege its counterclaims. CRK did not, in fact, prevail, and JMB brought this lawsuit as a plaintiff.

JMB's complaint contains three counts seeking breach of contract damages for the Flatbush, Glen Oaks, and Jericho Projects. CRK's first six counterclaims seek payment for each of the same projects, and the final two counterclaims make claims for the Flatbush Project based on the JMB Forest City settlement.

## II. Discussion

Plaintiff's motion for partial summary judgment argues that res judicata and/or collateral estoppel principles bar CRK's first, second, seventh, and eighth counterclaims pertaining to the Flatbush Project. Defendant's motion seeks to strike the

complaint under Federal Rules of Civil Procedure 11 and 37 as a sanction for alleged violations of this court's orders and for alleged efforts to mislead the court; it also requests partial summary regarding monies owed for the Jericho Project.

### A. Res Judicata and Collateral Estoppel[2]

The Full Faith and Credit statute, 28 U.S.C. § 1738, requires that this court give a "prior state judgment the same effect as would the adjudicating state." *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988). As the Hartford and Forest City Actions were decided by New York state courts applying New York state law, this court will look to New York's res judicata and collateral estoppel law.

#### 1. Standards

Under New York's transactional approach, res judicata, or claim preclusion, bars the litigation of a later claim finally decided on the merits arising out of the same facts as an earlier action, even if the later claim is based on different legal theories or seeks different relief. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *Vega v. University of N.Y.,* 67 F.Supp.2d 324, 333 (S.D.N.Y.1999); *see also Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 265 (2d Cir.1997) (noting that res judicata applies to privies as well as to parties to original action). Res judicata will not bar a later action if the first forum "did not have the power to award the full measure of relief sought in the later litigation" or if the party was prevented, whether by statute or otherwise, from advancing a particu-

1. According to CRK, an additional case named both JMB and CRK as defendants. The court has no other information on this lawsuit.

2. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrat-

ing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That is, if the parties' evidence conflicts, the court must accept as true the allegations of the non-moving party. *See id.*

lar legal theory. *Burgos,* 14 F.3d at 790 (citations omitted). However, if the party could have advanced a particular claim but did not do so, res judicata will apply. *See id.; Parker v. Corbisiero,* 825 F.Supp. 49, 54 (S.D.N.Y.1993); *see also Ferris v. Cuevas,* 118 F.3d 122, 126 (2d Cir.1997) (finding that res judicata barred subsequent action based on constitutional theory when earlier action did not raise that theory but was based on same transaction). Put another way, res judicata will bar later claims based on the same "factual grouping" if: "(1) the claims *could* have been raised in the initial forum, and (2) the initial forum had the power to award the *full* measure of relief sought in the later litigation." *Parker,* 825 F.Supp. at 54 (citations omitted); *see also Jacobson,* 111 F.3d at 265 (noting same).

 Collateral estoppel, or issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Burgos,* 14 F.3d at 792 (citations omitted). That is, two requirements must be met for the bar of collateral estoppel to apply: "(1) [t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling." *Id.* (citations, punctuation omitted); *see also Parker,* 825 F.Supp. at 56 ("[I]ssues which have been both litigated and decided adversely against a party in one forum cannot be relitigated by that party in a second forum, so long as disposition of that issue was necessary to the decision.").[3] In contrast to res judicata, collateral estoppel may apply regardless of the types of relief sought and available in the first action, so long as

there was a "full opportunity to litigate identical issues." *Burgos,* 14 F.3d at 792.

## 2. The Prior Litigation

As noted, there were two previous lawsuits in which CRK asserted claims against JMB based on the Flatbush Project. In the Hartford Action, CRK sued Hartford, JMB's surety, based on CRK's subcontract with JMB to perform electrical work for the Flatbush Project. *See* Hartford Compl. ¶ 4 (Pl.Ex.A). CRK contended that JMB had improperly failed to pay for work performed pursuant to the subcontract, *see id.* ¶¶ 5–6, and sought judgment against Hartford based on its issuance of a payment bond for that project. *See id.* ¶¶ 7–8. CRK presented numerous exhibits regarding monies paid and owed in that project, *see* Record on Appeal iv–xv (Def.Ex.B), and testimony addressed whether or not JMB owed CRK for work performed. *See, e.g.,* Robert Kohlmeyer[4] Test., Tr. at 108–15 (Def.Ex.B) (direct testimony regarding amounts owed and paid to CRK by JMB).

The jury charge clearly explained that the jury should find for the plaintiff CRK and against Hartford if it found that JMB owed CRK money for the Flatbush Project: "As the sole and exclusive judges of the facts, you will decide whether, and if so, to what extent monies are due and owing to the plaintiff, CRK, from the defendant Hartford as respects the plaintiff's subcontract agreement with Jeffrey M. Brown Associates." Jury Charge, Tr. at 1802 (Def.Ex.B). The court continued:

The parties substantially agree that in 1994 and 1995 a construction project took place for a Caldor store on Flatbush Avenue in Brooklyn where ... Forest City was the owner and where JMB was the general construction contractor, and that CRK was the electrical subcontractor hired by JMB for the project.... A defendant, Hartford Life In-

---

**3.** Obviously, that decision must constitute a valid and final judgment on the merits. *See, e.g., Vega,* 67 F.Supp.2d at 335.

**4.** Mr. Kohlmeyer is CRK's president.

surance Company, in issuing a payment bond covering the project, stands in the shoes of JMB, and is responsible for payments to the plaintiff to the same extent, if at all, that JMB would be responsible therefore.

Now in this lawsuit the plaintiff, CRK, seeks to recover the sum of $505,335 which it claims is the balance due it for work, labor and services, and for materials supplied by it, in connection with the construction project under its subcontractors agreement with ... JMB.

On the other hand, the defendant, Hartford, contends that there's no money due and owing to CRK by virtue of payments already made to it by JMB, as well as certain offsets or back charges that JMB claims it is entitled to, and that the plaintiff has failed to sustain its burden of proof that it is entitled to recover from defendant.

*Id.* at 1810–11; *see also id.* at 1822 (explaining that jury question one asks whether plaintiff is "entitled to recover from the defendant any monies due and owing under the terms of the subcontract"); Verdict Sheet (Def.Ex. C) (finding that CRK was not entitled to recover).

Similarly, in the Forest City Action, CRK sued JMB directly (along with many other parties) for monies allegedly owed for its subcontracting work on the Flatbush Project. *See* Forest City Compl. ¶¶ 13–17 (Def.Ex.E); *see also id.* ¶ 18 (alleging that CRK had filed a proper mechanic's lien for the amount owing). As noted, this complaint alleged that JMB and Forest City had settled their own litigation by creating a trust for payment of CRK and other parties that had performed work and that JMB had wrongfully refused to pay CRK its portion of that trust. *See id.* Counts I III (¶¶ 22–36);

Count V (¶¶ 40–54); *see also* Settlement Agreement between JMB and Forest City (Pl.Ex.D) (establishing, *inter alia,* escrow account for payment of lienors).[5] The trial court granted a motion for summary judgment submitted by several defendants, including JMB, based on res judicata and collateral estoppel, and the appellate court affirmed, stating,

> In the prior action the jury found that the plaintiff was not entitled to any additional payment for work performed under the subcontract with the defendant general contractor. Inasmuch as the plaintiff had a full and fair opportunity in the trial of the prior action to litigate this issue, this second action is barred.

*CRK v. JMB, Inc.,* 260 A.D.2d 530, 688 N.Y.S.2d 249, 251 (1999) (citations omitted).

### 3. Application

■ The prior two actions litigated precisely the question at issue in the counterclaims: whether or not JMB owes CRK money for work it performed as a subcontractor on the Flatbush Project. While CRK argues that neither res judicata nor collateral estoppel should apply, it does not challenge the following points relevant to the application res judicata: the Hartford and Forest City Actions were clearly final judgments, they were on the merits, and the identical issues were litigated as central, crucial claims. *See Vega,* 67 F.Supp.2d at 333. As to collateral estoppel, CRK also does not challenge that the issues in all three of these proceedings are essentially identical, that the issues were actually litigated in the prior proceedings, and that the issues were necessary to support a valid and final judgment on the merits. *See id.* at 335.

---

**5.** In its motion for sanctions, CRK alleges that the copy of this settlement agreement found at plaintiff's Exhibit D (CRK incorrectly states that it is Exhibit I) "willfully and deliberately" omitted a two-page list of the 41 mechanic's liens filed, including CRK's mechanic's lien of $505,335. *See* Def.Ex.G. CRK accuses JMB's former counsel of wrongfully appropriating this money for himself and asks for severe sanctions against JMB's current counsel for "trying to falsify a document" and mislead the court. The court sees no basis for imposing sanctions, particularly as the substance of the settlement is not dispositive.

CRK, however, makes the following general challenges to application of both doctrines: (1) CRK did not have a full and fair opportunity to litigate its claims; (2) JMB was not a party or a privy to the first action; and (3) the Standstill Agreement precludes the application of res judicata or collateral estoppel. Although the court will consider each of these arguments, it is important to note that, with the exception of the claims pertaining to the Standstill Agreement, each was rejected by the New York courts in the Forest City Action. *See* Plf. Reply Br. Ex. 1 (CRK's appellate brief in the Forest City Action, arguing, *inter alia,* that it did not have full and fair opportunity to litigate and that JMB was not privy to first action).

■ CRK first contends that it did not have a full and fair opportunity to litigate its claims in the Hartford Action because, upon Hartford's objection, the trial court excluded evidence of the settlement between JMB and Forest City after considering the very arguments that CRK is making now.[6] *See* Def. Ex. I (excerpts from trial transcript in which CRK and Hartford argued before the trial judge as to whether the settlement document should be admitted or discussed). CRK unsuccessfully appealed this issue to the New York appellate court. *See CRK v. Hartford Fire Ins. Co.,* 260 A.D.2d 529, 686 N.Y.S.2d 737 (N.Y.App.Div.1999) (stating that trial judge properly excluded evidence); *see also* Def. Ex. J (excerpts from JMB's appellate brief arguing that evidence was properly excluded). CRK's argument erroneously conflates an adverse evidentiary ruling with a deprivation of a full and fair opportunity to litigate: were CRK's perspective to prevail, a party would never be bound by any final decision if the trial judge made an evidentiary ruling with which it disagreed. Litigation in this forum does not present CRK with a second opportunity to appeal the trial judge's ruling.

■ CRK next argues that JMB cannot rely on res judicata or collateral estoppel from the Hartford Action because it was not in privity with the defendant. This argument is unavailing. New York law does not require identical parties for application of either collateral estoppel or res judicata. *See Ferris,* 118 F.3d at 126 (noting that res judicata bars subsequent claims against privies); *Dewitt, Inc. v. Hall,* 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967) (holding that res judicata does not require mutuality); *Corto v. Lefrak,* 203 A.D.2d 94, 610 N.Y.S.2d 214 (N.Y.App.Div.1994) (noting that neither res judicata nor collateral estoppel require identical parties); *New Paltz Sch. Dist. v. Reliance Ins. Co.,* 97 A.D.2d 566, 467 N.Y.S.2d 937 (1983) (holding that surety could raise collateral estoppel as defense when prior action against principal had fully determined merits of claim). While CRK refers to several cases in support of its claim that a surety is not united in interest with its insured, none of these cases addressed res judicata or collateral estoppel and were very fact-specific. *See Gerol v. G & H Ener. Maintenance Co., Inc.,* 239 A.D.2d 387, 658 N.Y.S.2d 328 (1997) (discussing unity of interest with respect to statute of limitations); *Kitson v. Atlantic Refining & Mktg. Corp.,* 227 A.D.2d 971, 643 N.Y.S.2d 862 (1996) (discussing unity of interest with respect to relation-back of service); *Trane Co. v. N. Robinson Const.,* 61 A.D.2d 360, 402 N.Y.S.2d 454 (N.Y.App.Div.1978) (discussing unity of interest regarding service and liability). Here, the identical nature of the claims asserted in the first action, and the fact that Hartford stood in JMB's shoes for liability purposes, permits JMB to claim res judicata and collateral estoppel as a defense to CRK's claims in this action

---

**6.** CRK contended that the JMB Forest City Settlement was relevant because CRK was listed as a mechanic's lienor in that document. According to CRK, the fact that it was included necessarily meant that JMB received money from Forest City to pay CRK and that JMB wrongfully appropriated the money for itself.

regarding payment allegedly owed for the Flatbush Project.

Perhaps more importantly, the New York state court in the Forest City Action implicitly rejected CRK's arguments given its ruling that res judicata and collateral estoppel required that the summary judgment motion be granted. Similarly, the New York appellate court rejected the same arguments, which were extensively discussed in CRK's appellate brief. *See* Plf. Supp. Ex. 1. That is, even if the court were to agree with CRK that the Hartford Action did not, on its own, implicate res judicata and collateral estoppel, the Forest City Action would be dispositive, as JMB was a party to that action.

■ CRK's final argument is that the Standstill Agreement requires that its counterclaims be allowed notwithstanding the defenses of res judicata and collateral estoppel. The Standstill Agreement traces the course of the litigation regarding CRK and JMB and provides that JMB and CRK "shall dismiss, without prejudice, the Flatbush Philadelphia Action, Glen Oaks Action and Jericho Actions by filing a joint motion and stipulation to the court requesting that the actions be dismissed." Standstill Agmt. ¶ 1.1 (Def.Ex.G). It further provides that if the appellate courts in New York affirmed the Hartford and Forest City Actions, "JMB, as plaintiff, shall commence an action by filing a complaint against CRK, as defendant, in the United States District Court for the Eastern District of Pennsylvania to recover damages against CRK incurred as a result of CRK's work in connection with the Flatbush Project, Jericho Project and Glen Oaks Project." *Id.* ¶ 3.1. The next paragraph says, "If JMB commences an action as described in paragraph 3.1, then CRK shall be entitled to assert any and all counterclaims against JMB as they relate to the Flatbush Project, Jericho Project and the Glen Oaks Project." *Id.* ¶ 3.2.

■ CRK contends that JMB's motion to dismiss the counterclaims is pre-cluded by paragraph 3.2's provision that CRK may assert its counterclaims. This conclusion is unwarranted. Under governing New York law, *see* Standstill Agmt. ¶ 5.4, "a writing must be interpreted 'to give effect to the intention of the parties' as expressed in the writing's unequivocal language." *Vega,* 67 F.Supp.2d at 334 (quoting *Wallace v. 600 Partners Co.,* 86 N.Y.2d 543, 634 N.Y.S.2d 669, 658 N.E.2d 715 (1995)) (also addressing a stipulation to dismiss a state court action); *see also Space Imaging Europe, Ltd. v. Space Imaging L.P.,* 38 F.Supp.2d 326, 334 (S.D.N.Y.1999) (same); *Reda v. Eastman Kodak Co.,* 233 A.D.2d 914, 649 N.Y.S.2d 555, 557 (N.Y.App.Div.1996) (same). The court may look beyond the four corners of the contract and consider extrinsic evidence only if language is ambiguous. *See Space Imaging,* 38 F.Supp.2d at 334.

The Standstill Agreement is not ambiguous, as its language is not reasonably susceptible of more than one interpretation. *See id.; see also County of Suffolk v. Long Island Lighting Co.,* 87 F.Supp.2d 187, 192 (E.D.N.Y.2000) (noting that a court need not find language ambiguous if the interpretation urged by one party would torture contractual language). The plain language of the agreement simply states that JMB will be permitted to assert its claims against CRK and that CRK will be able to assert its counterclaims; it does not say that the other party is barred from arguing against the legal propriety of such claims. *See id.* ¶ 3.2. That is, while the Standstill Agreement does not specifically preserve these defenses, neither does it waive them. *Cf. Sinicropi v. Milone,* 915 F.2d 66, 67–68 (2d Cir.1990) (holding that trial court improperly refused to enforce stipulation by which parties agreed to withdraw affirmative defenses of res judicata and collateral estoppel). The Standstill Agreement provides merely that the parties would litigate their claims against each other in this forum, that JMB would be plaintiff, and that CRK would be defendant. With the exception of statute of limitations defenses, *see* Standstill Agmt.

¶¶ 4.1–4.2, there is no discussion whatsoever of particular arguments, and the court will not read such language into the Standstill Agreement.[7]

## B. CRK's Request for Sanctions

CRK moves to strike the complaint pursuant to Federal Rule of Civil Procedure 37 based on (1) failure to comply with scheduling orders and discovery orders; (2) efforts to mislead the court regarding the settlement between JMB and Forest City; (3) efforts to mislead the court regarding the Standstill Agreement between JMB and CRK; and (4) efforts to mislead the court regarding the res judicata and collateral estoppel effect of former proceedings. The last three claims have already been resolved in the context of the res judicata/collateral estoppel discussion. As to the first claim, the present record does not support the extreme measure of striking the complaint, nor will the court appoint a monitor. *See Ali v. Sims,* 788 F.2d 954, 957–58 (3d Cir.1986) (reiterating strong presumption against sanctions that "decide the issues of a case"). However, as stated in the accompanying order, the plaintiff shall comply with all previous scheduling and discovery orders forthwith, to the extent that they are still relevant.

## C. CRK's Motion for Partial Summary Judgment[8]

CRK requests partial summary judgment on the Jericho Project based on a

letter from JMB's counsel dated May 17, 2000. The relevant portion of the letter addresses CRK's claims for the Jericho Project as follows:

> After reviewing JMB's accounting documents on the Jericho Project, it appears that CRK is owed one hundred thirty-three thousand three hundred seventy-three dollars ($133,373.00) less sixty-five thousand five hundred ten dollars ($65,-510.00) for claims made by Avon Electrical. Avon Electrical's claims were independently addressed and settled by JMB. As such, we are willing to concede that CRK is owed a total of sixty-seven thousand eight hundred sixty-three dollars ($67,863.00) as to Jericho.

Def. Ex. D; Plf. Resp. Ex. Q. In its memorandum in support of its response, JMB states that CRK's claim for $133,373 does not account for the Avon Electrical offset. However, it continues, "Therefore, CRK is not entitled to the partial summary judgment it seeks; at most, CRK would be entitled to partial summary judgment in the amount of $67,863.00, but it did not seek that relief and therefore is not entitled to it." Mem. at 18.

While the court agrees that there is a genuine issue of material fact as to any amount in excess $67,863.00, it would be excessively formalistic to deny CRK's motion for partial summary judgment when

---

7. One additional paragraph in the Standstill Agreement is at issue:

> This Settlement and Standstill Agreement constitutes the full and complete agreement between JMB and CRK with respect to its subject matter. Except as otherwise expressly provided herein, this Settlement and Standstill Agreement supercedes all prior agreements, understandings and discussions relating to the matters described herein. There are no representations, agreements, arrangements or understandings, oral or written, concerning the subject matter hereof between the parties which are not fully expressed or incorporated by reference herein.

*Id.* ¶ 5.5. JMB argues that this paragraph does not preclude the incorporation of an

earlier agreement between the parties, attached as Exhibit H to JMB's motion. This undated document provides that CRK may file all counterclaims, *see id.* ¶ 4(a), but it specifically preserves the defenses of res judicata and collateral estoppel for both parties. *See id.* ¶ 4(c). As the plain language of the Standstill Agreement permits the res judicata and collateral estoppel claims, it is unnecessary to resolve this argument. Also, while CRK again contends that JMB has attempted to deceive the court by including this document, there is no basis for drawing any such conclusion.

8. The court applies the same standards for summary judgment described previously to this motion for partial summary judgment.

JMB concedes that CRK is owed at least that much. The court will accordingly grant in part the motion for partial summary judgment on the claims pertaining to the Jericho Project in the amount of $67,-863.00. Obviously, the claims and counterclaims pertaining to this project cannot be dismissed, as there are still matters in dispute.

### III. Conclusion

As CRK has already litigated the claims in Counterclaims 1, 2, 7, and 8 against JMB, those counterclaims must be dismissed on the grounds of res judicata and collateral estoppel. While there is no basis for imposing sanctions on JMB, CRK is entitled to partial summary judgment in the amount of $67,863.00 on the Jericho Project claims.

An appropriate order follows.

### ORDER

**AND NOW**, this 14th day of June, 2000, upon consideration of the Plaintiff's Motion for Partial Summary Judgment on Defendant's Counterclaims, Defendant's Motion for Partial Summary Judgment and for Sanctions, and the responses thereto, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. Counterclaims 1, 2, 7, and 8 are **DISMISSED**.

2. Defendant's Motion for Partial Summary is **GRANTED** in part. The parties agree that the plaintiff owes the defendant $67,863.00 for the Jericho Project. As there is still a genuine issue of material fact as to remaining sums owed, the court will not dismiss those claims and counterclaims.

3. Defendant's Motion for Sanctions pursuant to Federal Rules of Civil Procedure 11 and 37 is **DENIED**. However, to the extent that it has not already done so, the plaintiff shall comply with the court's scheduling and discovery orders forthwith.